GREITEN and wife, Appellants, v. LA DOW, d/b/a B & B
Erectional Maintenance Service, Respondent.

*No. 555 (1974). Argued September 30, 1975.—Decided November
25, 1975.*
(Also reported in 235 N. W. 2d 677.)

For the appellants there were briefs by *Shneidman & Myers*, attorneys, and *Michael Skwierawski* of counsel, all of Milwaukee, and oral argument by *Mr. Skwierawski*.

For the respondent there was a brief by *Prosser, Wiedabach, Lane & Quale, S. C.*, attorneys, and *David M. Quale* of counsel, all of Milwaukee, and oral argument by *David M. Quale*.

ROBERT W. HANSEN, J. Injured while working on a printing press for his employer, plaintiff started this action against the manufacturer and designer of the angle-iron device attached to the press, alleging a defect in design of the device.[1] Ordinarily, one would expect this to be a products liability case. However, this approach would require the plaintiff to establish not only a defect in design but that such defect "was unreasonably dangerous to the user or consumer."[2] Seeking to avoid this precondition to recovery, plaintiff brought and tried this case on the basis of negligence, claiming a breach of a duty to design without defect. This can be done,[3] but the threshold question is, whether, by so

[1] The defect alleged is that, in the event of a power cutoff or failure, the angle irons retracted, permitting what was placed on them to fall a short distance to the pallet below. The claim is that a better design would have been to have the angle irons, in the event of power failure, to continue to support what had been placed on them by remaining in an extended position instead of returning to a retracted position.

[2] *See: Dippel v. Sciano* (1967), 37 Wis. 2d 443, 460, 155 N. W. 2d 55, holding that in products-liability cases, ". . . the plaintiff must prove (1) that the product was in defective condition when it left the possession or control of the seller, (2) *that it was unreasonably dangerous to the user or consumer*, (3) that the defect was a cause (a substantial factor) of the plaintiff's injuries or damages, (4) that the seller engaged in the business of selling such product or, put negatively, that this is not an isolated or infrequent transaction not related to the principal business of the seller, and (5) that the product was one which the seller expected to and did reach the user or consumer without substantial change in the condition it was when he sold it." (Emphasis supplied.)

[3] *See: Vincer v. Esther Williams All-Aluminum Swimming Pool Co.* (1975), 69 Wis. 2d 326, 330, 230 N. W. 2d 794, this court holding: "Where a plaintiff is unable to prove the elements necessary to recovery under a theory of strict liability, the manufacturer or seller may still be liable under a negligence theory where the plaintiff is able to prove specific negligent conduct."

doing, the plaintiff has escaped the requirement that he establish that the product contained a defect that was "unreasonably dangerous."

The answering of this question requires review of exactly what this court did do and did not do in the case of *Dippel v. Sciano, supra.* As had been done earlier in negligence cases,[4] the *Dippel* holding abolished the requirement of privity of contract in breach of implied warranty cases.[5] *Dippel* extended the liability of the manufacturer of a product to situations where no privity of contract existed. It went further to reject the contention that the liability of the seller of a defective product is not negligence holding that ". . . it is much more akin to negligence per se."[6] What was accomplished by the majority holding was capsulized in a concurring opinion by the Honorable Justice HALLOWS, as meaning that a seller who meets the conditions laid down for liability is ". . . guilty of negligence as a matter of law and such negligence is subject to the ordinary rules of causation and the defense applicable to negligence."[7] The holding in *Dippel* places products liability cases in this state in the field of negligence, no longer in the field of contractual rights and duties.

The *Dippel* holding of products liability in this state to be "more akin to negligence per se" than to breach of contract leaves little room to argue that a breach of implied warranty approach requires proof of an unreasonably dangerous defect, while a breach of duty to design approach does not require the identical precondi-

[4] *See: Smith v. Atco Co.* (1959), 6 Wis. 2d 371, 383, 94 N. W. 2d 697, 74 A. L. R. 2d 1095, this court holding: "We deem that the time has come for this court to flatly declare that in a tort action for negligence against a manufacturer, or supplier, whether or not privity exists is wholly immaterial."

[5] *Dippel v. Sciano, supra,* footnote 2, at page 459.

[6] *Id.* at page 461.

[7] *Id.* at page 464.

tion to recovery. If room there ever was, it vanished with the holding in the 1975 swimming pool case[8] where this court held: "However, even under negligence law, the plaintiff still must prove that the product causing the injury was dangerous and defective,"[9] and added, "Thus, the test in Wisconsin of whether a product contains an unreasonably dangerous defect depends upon the reasonable expectations of the ordinary consumer concerning the characteristics of this type of product."[10] It follows that the preconditions for plaintiff recovery, laid down in *Dippel*, apply in a products liability case whether the claim is one of breach of implied warranty or a breach of duty to design. Thus, if this plaintiff did not establish that the alleged defect in design "was unreasonably dangerous to the user or consumer," he cannot recover.

With proof of an unreasonably dangerous defect a precondition to recovery, we search the record and find that nowhere is there direct testimony as to such degree of danger. The expert witness for the plaintiff was not asked whether the device, as manufactured and installed, was unreasonably dangerous, or dangerous at all. He did not state that it was. He did state that there were theoretical alternatives as to design that he would consider to have greater operational and safety effectiveness. But proof offered by the plaintiff stopped at the claimed availability of different and allegedly superior methods of design. The testimony of an expert witness that he would have designed the device differently does not meet the precondition to recovery of establishing that the device, as manufactured and installed, was unreasonably dangerous to the user or consumer.

---

[8] *Vincer v. Esther Williams All-Aluminum Swimming Pool Co.,* *supra,* footnote 3.

[9] *Id.* at page 330.

[10] *Id.* at page 332.

Even in the absence of contention or direct testimony as to danger plus defect, the trial court went further to analyze the entire record and to conclude that, under no view of the testimony could a finding be made that the device as manufactured and installed was unreasonably dangerous. Three factors were given weight. The first factor given consideration by the trial court was the matter of the theoretical alternatives as to design suggested by the expert witness for the plaintiff. The trial judge analyzed in detail each suggested alternative method of design, and found each ". . . fraught with the possibility of exposing one, working near the device, to serious injury." The trial court concluded that the alternatives suggested, theoretical in nature, did not ". . . appeal to reason or good common sense." The trial judge further concluded that ". . . the substance of Richardson's [the plaintiff's expert] testimony does not establish a defectively designed product within the meaning of the law." Clearly, it did not. The second factor, considered by the trial court to be relevant, but not controlling, was the fact that there had been no prior accidents since the device was installed, a period of six years of daily use. This was a relevant factor, properly considered.[11] The third factor considered by the trial court was the matter of foreseeability of the danger by the maker of the device. This was a relevant factor.[12] The trial court held

[11] See: Netzel v. State Sand & Gravel Co. (1971), 51 Wis. 2d 1, 9, 186 N. W. 2d 258, this court stating: " 'Evidence of other accidents or similar occurrences at the same place or under similar conditions and circumstances may be admissible to show the probability of the defect in question, that the injury was caused by the defect and that the person responsible knew or should have known of the existence of the defect.' " (Quoting from 1 Jones, Evidence (5th ed.), p. 323, sec. 185.)

[12] See: Betehia v. Cape Cod Corp. (1960), 10 Wis. 2d 323, 332, 103 N. W. 2d 64, this court holding: "The test as applied to an action for breach of the implied warranty is keyed to what

that the maker of the device could not on this record be found obliged to foresee ". . . the most unusual and highly coincidental circumstances that had to be present for somebody to be injured in the manner Greiten was." The trial court found no other evidence in the record from which it could be reasonably inferred that the device did not function ". . . efficiently and safely for the very purpose for which it was designed and used."[13]

The test on appeal of a trial court's granting a motion for directed verdict is whether the trial court was clearly wrong.[14] As to the holding of the trial court here that the alternatives as to design suggested by the plaintiff were fraught with greater dangers than the design used and as to the foreseeability of the injury under these circumstances, we cannot hold that the trial court was clearly wrong. As to the trial court conclusion that the plaintiff here failed to meet the precondition to recovery of establishing that the product as designed was unreasonably dangerous, we hold that the trial court was clearly right.

*By the Court.*—Judgment affirmed.

is 'reasonably' fit. . . . As applied to the action for common-law negligence, the test is related to the foreseeability of harm on the part of the defendant."

[13] The trial court quoting *Campo v. Scofield* (1950), 301 N. Y. 468, 472, 95 N. E. 2d 802, the court there holding: "If a manufacturer does everything necessary to make the machine function properly for the purpose for which it is designed, if the machine is without any latent defect, and if its functioning creates no danger or peril that is not known to the user, then the manufacturer has satisfied the law's demands."

[14] *Merz v. Old Republic Ins. Co.* (1971), 53 Wis. 2d 47, 56, 191 N. W. 2d 876, this court holding: "On appeal this court will affirm a directed verdict unless the trial court is clearly wrong." (Citing *Topel v. Correz* (1956), 273 Wis. 611, 613, 79 N. W. 2d 253.)

HEFFERNAN, J. *(concurring)*. I agree with the majority's conclusion that, under any theory of liability, the plaintiff should be denied recovery. I consider unfortunate, however, the interjection of Restatement, 2 *Torts* 2d, p. 347, sec. 402 A standards, as modified by this court in *Dippel v. Sciano* (1967), 37 Wis. 2d 443, 155 N. W. 2d 55, in this negligence case.

This case was brought on a theory of negligence, not strict liability. Plaintiff alleged that the defendant was careless and negligent in the design and manufacture of the machine and that such negligence was the proximate cause of the accident and of the plaintiff's injuries. *Dippel v. Sciano* was brought upon an entirely different theory. In *Dippel,* plaintiff alleged that the manufacturer of the pool table "expressly and impliedly warranted" that the table was reasonably fit for the purpose for which it was used. Plaintiff did not allege or attempt to prove that the pool table was negligently constructed.

*Dippel* discusses with great thoroughness the reason why, in finding that the plaintiff stated a cause of action, the previous Wisconsin law requiring privity of contract in an action for a breach of implied warranty should be abrogated. That case points out that the ultimate consumer has the right to rely on the safety of a product placed in the stream of commerce. If in fact the product proves to be unsafe, that constitutes a breach of the warranty.

The principal effect of *Dippel* was to relieve the plaintiff from proving specific acts of negligence and to protect him from the defenses of notice of breach, disclaimer, and privity of contract. All plaintiff is required to show is that the product reached the consumer "in a defective condition unreasonably dangerous" to the user. The rule adopted from sec. 402 A, Restatement, 2 *Torts* 2d, is, in its original form, not a device for imposing liability for negligence. This is clear from sec. 402 A (2)

(a), which imposes liability even though "the seller has exercised all possible care in the preparation and sale of his product." Sec. 402 A imposes strict liability for tort, not for negligence. Because our system of tort liability in Wisconsin is based upon findings to be made in respect to a defendant's negligence and a plaintiff's contributory negligence, this court concluded, as a matter of policy, that the finding of strict liability under the standards of sec. 402 A was the equivalent of negligence per se.

Negligence per se, however, as *Dippel* points out, is not grounded upon the failure to exercise ordinary care, which includes within its compass the element of foreseeability.[1] Under the implied warranty, 402 A rationale of *Dippel*, foreseeability is not a factor. The policy purpose so effectuated is apparent. The intent of the *Dippel* rationale is to permit a plaintiff to recover under such circumstances where it is impossible or unduly burden-

---

[1] Unfortunately, this court has apparently inadvertently revived the issue of the exercise of ordinary care by the manufacturer in products liability cases. In *Powers v. Hunt-Wesson Foods, Inc.* (1974), 64 Wis. 2d 532, 536, 219 N. W. 2d 393, and *Arbet v. Gussarson* (1975), 66 Wis. 2d 551, 555, 556, 225 N. W. 2d 431, we noted by way of dicta that strict liability in this state in effect shifts the burden of proof of proving specific acts of negligence from the plaintiff to the defendant to prove he was not negligent in any respect. In this respect, the dicta in those cases impliedly, but somewhat irrationally, qualified the Restatement, 2 *Torts* 2d, sec. 402 A and *Dippel*, which state that the seller is liable, even though he has exercised all possible care in the preparation of his product. I do not think that this is, or should be, the law in Wisconsin. By allowing a defendant to prove he was not negligent, the essence of *Dippel* is destroyed and the basis for construing the nature of liability under sec. 402 A as negligence per se is totally obliterated. If *Powers* is correct, we might as well not have issued the opinion and mandate in *Dippel*. Under *Powers* and *Arbet*, the only effect of strict liability in Wisconsin would be to shift the burden of proof regarding specific acts of negligence from the plaintiff to the defendant. I do not believe this court intended to so dilute sec. 402 A as embodied in the *Dippel* holding.

some to show the elements of negligence. It is sufficient for the plaintiff to show that the product reached him in a dangerously defective condition. The purpose of *Dippel* was to take into account the "just claims of the injured and hapless user or consumer of industrial products." *Dippel,* page 450. It is sufficient in a case like *Dippel,* where the action is brought under implied warranty, to show that the product was "dangerously defective."

*Dippel* did not intend to apply the dangerously defective standard to an ordinary negligence case. It was not intended to modify or to limit a plaintiff's right to recover, but to extend that right to those circumstances where it was impossible to allege the particulars of negligence. It was not intended that *Dippel* be transplanted to negligence actions. It is interesting to note that the respondent in this case relies not at all upon *Dippel* or sec. 402 A. Neither is cited. This is because those authorities are totally irrelevant to this action.

This action is governed by *Smith v. Atco Co.* (1959), 6 Wis. 2d 371, 94 N. W. 2d 697, referred to in the majority opinion. In *Smith v. Atco Co.,* we said:

"We deem the time has come for this court to flatly declare that in a tort action for negligence against a manufacturer, or supplier, whether or not privity exists is wholly immaterial. The question of liability should be approached from the standpoint of the standard of care to be exercised by the reasonably prudent person in the shoes of the defendant manufacturer or supplier." (P. 383)

Accordingly, under the well-established rules of negligence in Wisconsin, the plaintiff is simply required to prove that the defendant failed to exercise ordinary care and the act or omission complained of was the cause, in the legal sense, of the plaintiff's injury. That latter consideration, of course, carries with it the entire panoply

of rules concerned with cause in fact, proximate cause, and intervening cause.

The fundamental question of ordinary care, however, carries with it the concept of foreseeability. *Osborne v. Montgomery* (1931), 203 Wis. 223, 234, 234 N. W. 372, discussing foreseeability, states:

"The liability of the actor may therefore depend upon whether or not the actor as an ordinarily prudent and intelligent person should reasonably have foreseen as a consequence of his act that injury would probably result."

Accordingly, in the instant case, where the action is grounded on negligence, it was necessary for the plaintiff to show that the respondent La Dow, in the exercise of ordinary care, should have foreseen that his design and method of installation would be unreasonably dangerous to others. This, as the majority opinion correctly points out, he did not prove and, therefore, he cannot recover. It is boiler-plate law that, merely because a product or an operation is not as safe as possible, because there are better methods of manufacture or performing an operation does not lead to the conclusion that the method employed was undertaken with a lack of ordinary care or the product was defective. But the crucial question in the analysis of this case is that, where negligence is asserted, it is necessary to prove what was done and to prove that what was done was foreseeably hazardous to someone. The duty is one of ordinary care. The failure to exercise ordinary care constitutes a breach of the duty; and if harm is caused by that breach of duty, liability results. This is obviously an onerous task for a plaintiff. If the lack of ordinary care results in a defective design, it is indeed true that the product may well be unreasonably dangerous even in the sense of *Dippel v. Sciano*. As Comment *a* to sec. 402 A, page 348, of the Restatement, 2 *Torts* 2d, says:

"The rule stated here is not exclusive, and does not preclude liability based upon the alternative ground of negligence of the seller, where such negligence can be proved."

Sec. 402 A does not impose liability for negligence at all. It imposes liability for tort, and it is only for the purposes of fitting the *Dippel* rationale into the framework of our comparative negligence statute that we refer to it as negligence, albeit, a legal-policy type of negligence per se. In the *Dippel* type of case, the burden of proof that the product was in a defective condition at the time it reached the hands of the ultimate consumer is upon the plaintiff; and in the event he meets that burden of proof, there is liability. It is not necessary to show any specific acts of negligence. It is not necessary to show duty in terms of foreseeability. It is enough to prove, irrespective of due care, that, because of its dangerously defective nature, the product caused harm.

Where a plaintiff proves negligence—in this case, the lack of ordinary care in the design of a product—there is no doubt that there may be recovery in the event the defective design results in an unreasonably dangerous product,[2] but there may be recovery for the negligent design of a product even though it is not unreasonably dangerous in the 402 A sense. All that it is necessary to prove is that the product is designed with a lack of ordinary care and that lack of care resulted in injury. No test of negligence has been called to the attention of this writer that requires that the product be unreasonably dangerous in order to predicate lia-

---

[2] Indeed, a showing that the product was unreasonably dangerous would certainly be relevant to proving that the product was designed or constructed in a negligent manner. However, whereas in a sec. 402 A case the focus is upon the condition of the product, in an ordinary negligence case the focus is upon the conduct creating a particular condition of a product.

bility. The use of that and similar terms was laid to rest in *Smith v. Atco Co.*, when we discarded the term, "inherently dangerous." We said therein:

"If a manufacturer or supplier is hereafter to be relieved from liability as a matter of law by the courts, such result should be reached on the basis there was no causal negligence established against the defendant rather than that the product was not inherently dangerous." (Pp. 383, 384)

The same rule is applicable in the instant case. While I completely agree with the majority opinion that the proof was insufficient, I am satisfied that the threshold question is not whether the product was unreasonably dangerous but whether the defendant exercised ordinary care and whether that lack of ordinary care was the legal cause of the injuries. It is obviously desirable to attempt to do what the majority strives for—to have some uniformity of rules between the *Dippel* concept and the ordinary negligence concept. I believe, however, it is a matter of comparing apples and oranges, for *Dippel* is based upon the public-policy premise that a seller is socially responsible for what he puts into the stream of commerce irrespective of his degree of care. That liability is absolute unless diminished by our concept of contributory negligence. On the other hand, negligence is based upon a theory of fault. We look in the ordinary negligence case not only to the result of the defendant's action, but rather to his conduct in attaining that result. It is, accordingly, erroneous to conclude that the threshold question in each case is whether the end product is dangerously defective.

I am authorized to state that Mr. Chief Justice WILKIE, Mr. Justice BEILFUSS, and Mr. Justice DAY join in this concurrence.