Patricia B. HANSEN, Kathleen Barch, Joanne Bergmann and Mary Peluso Fox, Plaintiffs-Appellants,

v.

CESSNA AIRCRAFT COMPANY, Defendant-Appellee.

No. 77–1753.

United States Court of Appeals, Seventh Circuit.

Argued April 7, 1978.

Decided June 16, 1978.

Rehearing and Rehearing En Banc Denied July 24, 1978.

2. *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

Michael D. Moorhead, Los Angeles, Cal., for plaintiffs-appellants.

James P. O'Neill, Milwaukee, Wis., for defendant-appellee.

Before SPRECHER and WOOD, Circuit Judges, and VAN PELT, District Judge.*

SPRECHER, Circuit Judge.

The issue in this appeal is whether Wisconsin law requires a federal district court in a product liability case based on diversity of citizenship jurisdiction to instruct the jury on theories of recovery based on both strict liability and negligence.

I

Plaintiffs are the heirs of three passengers and a pilot who were killed when a model 421B airplane manufactured by defendant, Cessna Aircraft Company, crashed in Brookfield, Wisconsin on February 19, 1973. Although vast quantities of transcript and documents appear in the record, relatively little is actually known about the crash. At about 7:17 a. m., the plane left Timmerman Airport in Milwaukee, Wisconsin en route to Circleville, Ohio. The plane itself was a commercial vehicle that had accumulated about 117 hours of in-flight use, and it was being flown by a licensed, and experienced commercial pilot. About fifteen minutes after departure, the pilot reported to the Air Traffic Control Center that he was having mechanical difficulty in the turbocharger in the left engine and requested clearance to return to the Timmerman Airport. After receiving clearance and while on the way back to Milwaukee, the pilot twice reported a rough running left engine. Tragically, the plane crashed on its final approach to Timmerman Airport, killing the three passengers and the pilot.

Suits were filed in various courts against the plane manufacturer, Cessna; the engine manufacturer, Teledyne-Continental Motors; the turbocharger manufacturer, Garrett Corporation and the seller of the plane, Walston Aviation, Inc. All of the actions were consolidated in the federal district court in the Eastern District of Wisconsin with jurisdiction properly based on diversity of citizenship.

* District Judge Robert Van Pelt, of the United States District Court for the District of Nebraska, is sitting by designation.

During trial, settlements were reached between the plaintiffs and defendants, Walston Aviation Sales and Teledyne-Continental Motors. Also, during the trial the court dismissed plaintiffs' complaint against Garrett Corporation. Thus, Cessna remained as the sole defendant throughout the trial.

Plaintiffs' complaint alleged in Count I that defendant Cessna "negligently designed, assembled, manufactured, inspected, tested, certified, sold and delivered and after delivery serviced" the aircraft that approximately caused the deaths of the passengers and pilot. In Count III plaintiffs alleged that the aircraft had a defect that ordinarily could not be detected by a consumer, that made the aircraft unreasonably dangerous and that proximately caused the death of the passengers and the pilot of the plane.

■ A jury trial was held before the district court that lasted from February 14, 1977 till March 18, 1977. At the trial, although most of plaintiffs' evidence tended to prove that the exhaust system on the left side of the engine had a defect which caused a fire during the flight and which ultimately caused the plane to crash,[1] some evidence dealt with the defendant's conduct. Plaintiffs presented expert testimony to the effect that Cessna was on notice that the parts in the exhaust system of the model 421B might not be able to contain adequately all of the hot exhaust gases being transported between the engine and the turbocharger (Tr. at 1488–1535). In addition, one expert stated that the tests Cessna performed were inadequate to discover any of the defects in the exhaust system (Tr. at 1535–37). Thus, there was some evidence, albeit certainly not overwhelming in quantity, from which an inference of negligence, at least with regard to inspection, could have been drawn by the jury.[2]

At the conclusion of the trial, the district court instructed the jury as to the requirements for plaintiffs to recover against the defendant under a theory of strict liability, but for reasons that were not recorded, it declined to read plaintiffs' negligence instruction to the jury. Plaintiffs' proffered instructions read as follows:

It is the duty of a manufacturer to exercise ordinary care in the design, construction, and manufacture of its product so as to render such product safe for its intended use.

It is further the duty of the manufacturer, in the exercise of ordinary care, to make all reasonable and adequate tests and inspections of its product so as to guard against any defective condition which would render such product unsafe when used as it is intended to be used. A manufacturer is charged with the knowledge of its own methods of manufacturing its products and the defects in such methods if any.

1. Although the technical explanation for the plane crash offered by plaintiffs is somewhat complex, it appears that the engine was designed so that exhaust gases in the engine would be recirculated through the turbochargers. In previous models of this plane, plaintiffs showed that due to a leak in a seal, the gases leaked back into the engine. Since these gases were very hot they ignited something in the engine, thereby causing a fire in 48 out of 421 aircraft manufactured and delivered by Cessna between 1972 and September 1973. To correct this problem, Cessna substituted a new type of seal. Plaintiffs contend that the new seal, however, froze, which caused the ball joint which regulated movement between the engine and the turbocharger to snap. This break permitted exhaust gases to leak into the engine which caused the oil filter to melt igniting the oil. This caused an intense localized fire which caused the crash.

This, of course, was plaintiffs' theory of the accident. At least one contrary theory was that the pilot was negligent, although the jury expressly held to the contrary. Also, it could be that the negligence of the other defendants who settled the case was the actual cause of the accident.

2. Plaintiffs also cite testimony suggesting that some of the materials and parts used in the exhaust system of a 421B airplane were "below the standards of the industry" (Tr. at 1236). Plaintiffs, however, did not inquire of the witness whether these inadequacies were sufficient to have "caused" this accident. Thus, defendant's alleged "negligence" in design and manufacture was not proved to have been either the cause in fact or the proximate cause of plaintiffs' injuries. The district court therefore correctly refused to instruct the jury on these issues.

Failure of the manufacturer to perform any such duty constitutes negligence.

Plaintiffs also tendered a special verdict interrogatory on the issue of defendant's negligence and they objected to the court's refusal to instruct the jury on negligence both at the time of the jury deliberations and in post-trial motions.

The jury delivered a special verdict in which it responded "No" to the question: "Was the Cessna 421B airplane, when it left the possession of the Cessna Aircraft Company, in a defective condition which made it unreasonably dangerous to its users?" In addition, the jury answered "No" to the question: "Was the pilot, Robert Hansen negligent with respect to the operation of the Falk 421B airplane?" Based on these answers, the district court entered judgment in favor of defendant. Plaintiff appeals that judgment.

## II

The sole issue on this appeal is whether the district court erred in refusing to deliver plaintiffs' proffered negligence instruction to the jury. Since defendants do not deny that there was sufficient evidence of negligence on its part, at least as to the question of inspection, to defeat a directed verdict, our inquiry is limited to whether Wisconsin law requires a trial court to present theories of recovery based on both negligence and strict liability to the jury in a products liability case.[3]

We note at the outset that that inquiry is not so uncomplicated as it might otherwise appear for the development of products liability law in Wisconsin has been somewhat unique. Wisconsin first adopted a form of strict liability for products liability cases in *Dippel v. Sciano,* 37 Wis.2d 443, 155 N.W.2d 55 (1967). The Wisconsin Supreme Court basically adopted section 402A of the Restatement 2d of Torts,[4] but characterized the basis for recovery as "negligence *per se.*" Although not expressly stated, it appears that the reason the court took this unusual approach was to guarantee that any recovery based on section 402A was still subject to Wisconsin's comparative negligence statute. *See* Twerski, *From Defect to Cause to Comparative Fault—Rethinking Some Product Liability Concepts,* 60 Marq.L.Rev. 297, 324–25 (1977). Apparently all that the Wisconsin Supreme Court sought to do by adopting "strict liability" was to relieve a plaintiff from "proving

3. Defendant argues that a decision regarding the form of a jury instruction is a procedural matter firmly committed to the district court's discretion, and that the issue must be resolved on the basis of federal law. While the general rule upon which defendant relies—that the form of a jury instruction is procedural and thus is most likely controlled by federal law—creates no serious controversy, its application as proposed by defendant in this case runs roughshod over *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). It seems clear that a decision whether or not to present to the jury various of plaintiffs' theories of liability that are fully supported by some evidence at trial affects far more than the form of the jury instruction. It is the essence of the substantive law to be applied to the case, and therefore is clearly controlled by state law. Placed in the framework of the Supreme Court's most recent pronouncement on these matters, *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), it would be difficult to imagine a difference in the rules applied in state as opposed to federal courts that could have a greater tendency to lead to forum-shopping or inequitable administration of the laws. *Id.* at 468, 85 S.Ct. 1136. Thus,

even if we accept defendant's attempt to characterize the matter as one of "procedure," we would still conclude that it must be resolved on the basis of Wisconsin state law.

4. Section 402A of the Restatement 2d provides as follows:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

specific acts of negligence and protect him from the defenses of notice of breach, disclaimer, and lack of privity in the implied warranty concepts of sales and contracts." 37 Wis.2d at 460, 155 N.W.2d at 63.

Subsequently, the Wisconsin Supreme Court held in *Vincer v. Esther Williams All-Aluminum Swimming Pool Co.,* 69 Wis.2d 326, 230 N.W.2d 794 (1975), that recovery under a theory of negligence required a plaintiff to "prove that the product causing the injury was dangerous and defective" and that the defendant failed to exercise reasonable care. *Id.* at 330, 230 N.W.2d 794. Under this view, there would be very little incentive for a plaintiff to seek recovery based on a defendant's negligence because he would be able to recover under strict liability by proving defect and danger without having to prove anything about defendant's conduct. The district court's action in our case seems quite consistent with the analysis of the Wisconsin Supreme Court in *Vincer.*

The validity of this approach in Wisconsin, however, became somewhat doubtful just five months after *Vincer* was decided in *Greiten v. LaDow,* 70 Wis.2d 589, 235 N.W.2d 677 (1975). There, the court split badly on the question whether recovery under negligence was of any significance in light of the availability of recovery under "strict liability" or "negligence *per se.*" The opinion of the court, which for some odd reason represented only three of the seven justices,[5] reaffirmed the view expressed in *Vincer.* The "concurring" justices, however, concluded that "[w]here a plaintiff proves negligence . . . there

is no doubt that there may be recovery in the event the defective design results in an unreasonably dangerous product, but there may be recovery for the negligent design of a product even though it is not unreasonably dangerous in the 402A sense." 235 N.W.2d at 685 (Heffernan, J., concurring).

Obviously, the court's resolution of this issue in *Greiten* was less than definitive. The issue, however, was squarely before the Wisconsin Supreme Court in *Howes v. Deere & Co.,* 71 Wis.2d 268, 238 N.W.2d 76 (1976). In *Howes* the trial court relying on *Dippel* required plaintiff at the close of the case to elect between recovery based on negligence or recovery based on "strict liability." The Wisconsin Supreme Court unanimously reversed and held that "when two grounds of negligence are alleged it does not categorically follow that plaintiff must always elect one of the two grounds of negligence for submission to the jury." 238 N.W.2d at 79.[6] In so holding the court withdrew the statement in *Vincer* that was to the contrary and elevated Justice Heffernan's concurrence in *Greiten* to the opinion of the court.

In attempting to define the distinction between negligence and "strict liability," the court reasoned "where the claim is based upon negligence, it is necessary to prove what the seller or manufacturer did or did not do; that there was a breach of duty of ordinary care and that the element of foreseeability was encompassed as an element of proof." 238 N.W.2d at 80. If, however, the claim is predicated on "negligence *per se*" or "strict liability," then there need only be proof of "a defective

5. This fact was noted subsequently by the Wisconsin Supreme Court and corrected in *Howes v. Deere & Co.,* 71 Wis.2d 268, 238 N.W.2d 76 (1976). The *Howes* court elevated the concurring opinion in *Greiten* to the "opinion of this court." 238 N.W.2d at 80. *See generally,* Note, *Strict Products Liability in Wisconsin,* Wis.L.Rev. 227 (1977).

6. Defendant contends that we should pay special attention to the court's statement in *Howes* that "[i]t may be appropriate to submit only one question, or it may be desirable to submit a question on each issue. The issue must be on a case-by-case basis and at the time of trial."

238 N.W.2d at 79. Defendant argues that this means that the issue of what instruction to give is firmly committed to the trial court. The problem with defendant's argument is that the court in *Howes* provides no guidelines suggesting how a trial court is to exercise this discretion. Moreover, nothing in the record indicates why the trial court here chose to use only one instruction. In such a situation, we decline to seize one isolated comment in a single opinion as a basis for a federal court to reject cavalierly the apparent state policy favoring giving instructions on both negligence and strict liability in products liability cases.

condition unreasonably dangerous to the user or consumer . . . ." *Id.* In reaching the conclusion that such a distinction was not unreasonable, the court relied on Comment a to section 402A of the Restatement for the proposition that

"[t]he rule stated here is not exclusive, and does not preclude liability based on the alternative ground of negligence of the seller, where such negligence can be proved."

238 N.W.2d at 80. *See also* W. Prosser, Law of Torts 644 (4th ed. 1971).

■ If we apply the Wisconsin Supreme Court's negligence standard to this case, it is clear that plaintiffs have made a prima facie showing of liability with regard to defendant's efforts at inspection. Plaintiffs showed through an expert that Cessna knew that its exhaust system was subject to a leakage problem (Tr. at 1488–1535) and that its inspection testing procedures could not locate accurately any leaks in that system (Tr. at 1535–37). It is reasonable to infer a duty to test adequately from the fact that Cessna was selling these products with knowledge of a possible defect. That an exhaust system leak could lead to an in-flight fire which could in turn lead to an airplane crash was certainly foreseeable. It is our view that if plaintiffs make out a prima facie case of negligence, then Wisconsin law requires the trial judge to instruct the jury on that issue as well as on strict liability.

Defendant argues that the jury's finding that there was no defect that was unreasonably dangerous precludes a finding that there was negligence that caused plaintiffs' injuries, and therefore the district court did not err in refusing to give a negligence instruction. The argument is that negligence requires a finding that the product creates an unreasonable risk of harm to the consumer. If the jury found neither an "unreasonable danger," *i. e.,* that the danger was not obvious,[7] nor a "defect," *i. e.,* that the product was not below an average consumer's expectations,[8] then it could not have found an unreasonable risk of harm created by any of defendant's conduct in relation to the product. *See* Twerski, *supra* at 331–35; Note, *Products Liability in Wisconsin,* 1977 Wis.L.Rev. 227, 239–40.

While the argument has substantial logical appeal, we, nonetheless, decline to adopt it for two reasons. First, a federal district court in a diversity case does not sit in judgment on the substantive law of the State in which it sits. *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 88 (1938). The district court's role is merely to determine what the rule in the state is and apply it. Thus, even if the state rule appears to a federal court to be unnecessary or even inappropriate—a position we are not adopting in this case—it does not have the power to ignore that rule. Our federal system requires that State law nevertheless controls. Thus, once we have determined that the Wisconsin Supreme Court rejected defendant's argument in *Greiten v. LaDow* and *Howe v. Deere & Co.,* then the issue is effectively resolved.

Moreover, even if we were to conclude that we have the power to ignore "unreasonable" state rules of law, we still would find it error for the district court not to have given plaintiffs' negligence instruction to the jury in this case. Defendant's view of the relationship between strict liability and negligence is predicated on the assumption that the term "unreasonably dangerous" has only its Restatement meaning. It is quite possible that the Wisconsin Supreme Court was fearful that the term might connote more to a jury deciding a products liability case than the "obviousness" of a defect in the product at issue. As one commentator has noted the term "unreasonably dangerous" "sounds as if the requisite proof for a product defect is some form of 'extraordinary' danger." Twerski, *supra* at 334.

Thus, although the jury may well have decided as defendant contends that there was no defect in its engine that caused the

---

7. Restatement (Second) of Torts, § 402A, Comment i. (1965); W. Prosser, *supra,* at 659.

8. Restatement (Second) of Torts, *id.,* Comment g.; W. Prosser, *supra* at 659.

injuries, it is equally probable—at least as viewed by the Wisconsin Supreme Court's decisions—that the jury found that the defect did not create a quantum of "danger" that reached the level of "unreasonable." This latter finding does not preclude a finding that there was a defect in the engine that could have been discovered by a reasonable inspection and that the failure to do so constituted a breach of defendant's duty, which breach caused plaintiffs' injuries.

Since strict liability was adopted in Wisconsin to make recovery easier for plaintiffs in products liability cases, it seems quite probable that the Wisconsin courts, fearful lest juries might be misled by a strict liability instruction, wanted juries to be able to consider additional bases for recovery, including negligence. Viewed in this light, the Wisconsin Supreme Court's decision to provide alternative negligence and strict liability recovery in products liability cases certainly is not unreasonable. Thus, we conclude that the district court failed to apply Wisconsin's products liability rule when it declined to instruct the jury on both strict liability and negligence. We therefore must reverse its judgment and remand for a new trial on the issue of defendant's negligence, as to inspection.[9]

REVERSED and REMANDED.

---

**9.** Plaintiffs complain additionally that the district court erred in refusing to instruct the jury on the issue of *res ipsa loquitur.* Plaintiffs, however, recognize that the *defendant's* exclusive control of the instrumentality causing the injury is a necessary condition before the inferences of *res ipsa loquitur* are permitted to be considered by the jury. *See Turk v. Prange,* 18 Wis.2d 547, 119 N.W.2d 365 (1963). The evidence establishes that subsequent to defendant's sale of the plane a complete teardown inspection was conducted by the Falk Corporation. Thus, defendant lacked exclusive control over this aircraft. We find the Wisconsin Supreme Court's decision in *Ryan v. Zweck-Wollenberg Co.,* 266 Wis. 228, 64 N.W.2d 226 (1954), to be distinguishable from this case on its facts. The alleged defective part in this case was not isolated in any way similar to the way that the part in the refrigerator door was in *Ryan.* Thus, we find no error in the district court's refusal to instruct on *res ipsa loquitur.*