Steven Joel SHARP, a minor, by Corey L. Gordon, his
Guardian ad Litem, and Randolph Sharp and Betty
Sharp, individually, Plaintiffs-Respondents,

v.

CASE CORPORATION, a Delaware corporation,
Defendant-Appellant-Petitioner.

Supreme Court

*No. 96–2559. Oral argument December 1, 1998.—Decided
June 23, 1999.*

(Also reported in 595 N.W.2d 380.)

4

For the defendant-appellant-petitioner there were briefs by *Ralph A. Weber, Sandra L. Botcher* and *Reinhart, Boerner, Van Deuren, Norris & Rieselbach, S.C.*, Milwaukee; *Brian G. Cahill*, Racine; *Andrew L. Frey* and *Mayer, Brown & Platt*, New York, NY; *James C. Schroeder* and *Mayer, Brown & Platt*, Chicago, IL and oral argument by *Andrew L. Frey*.

For the plaintiffs-respondents there was a brief by *Daniel W. Hildebrand* and *DeWitt, Ross & Stevens, S.C.*, Madison and *William H. Manning, David W. McKenna, Howard R. Orenstein* and *Robins, Kaplan, Miller & Ciresi, L.L.P*, Minneapolis, MN and oral argument by *William H. Manning*.

¶ 1. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE. Case Corporation seeks review of an unpublished decision of the court of appeals, *Sharp v. Case Corporation*, No. 96–2559, unpublished slip op. (Wis. Ct. App. Dec. 10, 1997), which affirmed a judgment of the Circuit Court for Racine County, Emily S. Mueller, Judge.

¶ 2. The jury awarded $6,309,611.80 in damages to Steven Joel Sharp, a minor residing and working in the state of Oregon, for injuries he suffered while clearing hay from a baler that was attached to a tractor manufactured in Wisconsin in 1972 by Case Corporation. The jury awarded Steven Sharp $2 million for punitive damages and awarded his parents, Randolph and Betty Sharp, $22,490 damages for parental loss of society and companionship. After taking into account Steven Sharp's contributory negligence, the circuit court entered judgment in accordance with the jury verdict. The court of appeals affirmed the circuit court judgment.

¶ 3. Case Corporation challenges the court of appeals decision on four grounds. First, it argues that the court of appeals erred in refusing to apply the products liability statute of repose of the state of Oregon, which Case Corporation asserts would bar this action as untimely. After reviewing the Oregon case law, we conclude that Oregon's product liability statute of

repose is not applicable to a post sale warning claim such as the one involved in the present case. Under Wisconsin law this action is timely.

¶ 4. Second, Case Corporation argues that the court of appeals erred in refusing to apply the law of the state of Oregon that Case Corporation asserts limits an award of non-economic damages to $500,000. We conclude that because Oregon courts are not applying the statutory limits on non-economic damages, this court should not apply the Oregon statutory limits in this case, even if we were to decide, which we do not, that this law is applicable in this case.

¶ 5. Third, Case Corporation contends that the court of appeals erred in refusing to invalidate the jury verdict on the grounds that it contains inherent and fatal inconsistencies. We conclude that the verdict is valid under *Greiten v. LaDow*, 70 Wis. 2d 589, 235 N.W.2d 677 (1975), which allows recovery for the negligent design of a product even though the product is not unreasonably dangerous in a strict product liability sense. We decline Case Corporation's invitation to overrule *Greiten*. We further conclude that the jury finding that the product was not unreasonably dangerous is consistent with the jury finding that after manufacture and sale of the product Case Corporation learned of a defect posing a serious hazard, which originated and was unforeseeable at the time of manufacture, and yet it failed to exercise due care in warning customers of the danger.

¶ 6. Fourth, Case Corporation argues that the evidence presented at trial was insufficient, as a matter of law, to justify submitting the question of punitive damages to the jury. We conclude, as a matter of law, that the evidence presented warranted a conclusion to a reasonable certainty that Case Corporation acted

with the requisite "outrageous" conduct and that therefore the question of punitive damages was properly submitted to the jury.

I

¶ 7. The facts are undisputed for purposes of this review. Additional facts pertinent to particular issues will be set forth later in the opinion.

¶ 8. On August 22, 1992, 17-year-old Steven Sharp, a resident of the state of Oregon, was injured while working on a farm in Richland, Oregon. At the time of his injury, Sharp was operating a Hesston Model 5800 hay baler attached to a Case International 970 diesel tractor and operated by the tractor's power takeoff (PTO) drive shaft, which is run directly from the tractor's diesel engine by hydraulically operated clutches. The lever controls for operating the PTO drive shaft are located in the cab of the tractor.

¶ 9. As Sharp was driving the tractor and baling hay, he could hear that the hay was not feeding properly into the baler. Because he assumed that loose hay was jamming the baler and needed to be cleared, he powered down the tractor engine and pushed the tractor's PTO control lever rearward, stopping the PTO drive shaft and shutting off the baler. Sharp got down from the tractor, walked back to the baler and began clearing the loose hay that had gathered in front of the rollers. As he reached in to pull out some of the hay, the baler suddenly self-started, drawing in Sharp's hands and slowly amputating both of his arms just below the elbow.

¶ 10. At the time of Sharp's injury, the tractor was owned by his employer, Dwight Saunders, who had purchased the tractor in 1979 secondhand from a farm implement dealer in the state of Oregon. The tractor

had been manufactured in 1972 in Wisconsin by Case Corporation, a Delaware corporation with its principal place of business located in Racine, Wisconsin.

¶ 11. On February 12, 1993, Steven Sharp and his parents, Randolph and Betty Sharp, filed a complaint against Case Corporation in Wisconsin alleging several theories of liability. They claimed that Case Corporation should be found liable because the tractor was defective and unreasonably dangerous at the time it left the manufacturing plant; that the tractor was negligently designed, tested, manufactured and assembled; that Case Corporation negligently failed to issue adequate warnings; that Case Corporation negligently failed to recall the defective tractor; and that Case Corporation failed to issue warnings after it was put on notice of the self-start defect.

¶ 12. On April 19, 1995, Case Corporation filed a motion for summary judgment contending that the Oregon eight-year statute of repose for products liability should be applied to bar the Wisconsin suit. The circuit court denied the motion for summary judgment, citing *Leverence v. United States Fidelity & Guaranty*, 158 Wis. 2d 64, 462 N.W.2d 218 (Ct. App. 1990), for the proposition that the timeliness of the action is governed by the borrowing statute, Wis. Stat. § 893.07, and that the borrowing statute does not borrow another state's statute of repose.

¶ 13. On February 20, 1996, a jury trial was commenced. Among other facts, it was established at trial that Case Corporation had on at least one prior occasion received notice of an injury caused by the tractor's self-start defect. That similar injury was sustained in 1985 by a Tennessee farmer whose arm was horribly mangled in a hay baler being run off of a Case 970 tractor by way of a PTO drive shaft. The accident

report received by Case for that injury stated that the PTO drive shaft had suddenly and without warning become engaged.

¶ 14. The jury found that Case Corporation had been negligent in issuing the warnings accompanying the tractor at the time of sale and that Case Corporation had breached its duty to issue post sale warnings, thereby causing Sharp's injuries.[1] In response to a special verdict question, the jury answered that Case Corporation's conduct was outrageous and assessed punitive damages against Case Corporation in the amount of $2 million.

¶ 15. Both Case Corporation and the plaintiffs brought post-verdict motions. In its ruling on the post-verdict motions, the circuit court granted entry of judgment consistent with the jury verdict, and Case Corporation appealed. The court of appeals affirmed the circuit court judgment in its entirety.

## II

¶ 16. The first issue presented by Case Corporation is whether the court of appeals erred in refusing to apply the Oregon statute of repose applicable to products liability actions,[2] which Case Corporation asserts would bar the action as untimely.

¶ 17. The choice of applicable law is a question of law, which this court determines independent of but benefiting from the analyses of the circuit court and court of appeals. Wis. Stat. § 902.02(3) (1997–98). The threshold determination in a conflict of laws case is

---

[1] The jury apportioned 50% of the fault to Case Corporation, 15% to Dwight Saunders and 35% to Steven Sharp.

[2] Or. Rev. Stat. § 30.905(1) (1997).

whether a genuine conflict exists between Wisconsin law and the law of the other state. *Gavers v. Federal Life Ins. Co.*, 118 Wis. 2d 113, 115, 345 N.W.2d 900 (Ct. App. 1984). If the laws of the two states are the same, we apply Wisconsin law.

¶ 18. Case Corporation contends that because the tractor in issue was first sold in 1972, any liability on its part for Sharp's 1992 injuries was precluded by the eight-year limitation in the Oregon statute of repose. The Oregon statute of repose provides that "a product liability civil action shall be commenced not later than eight years after the date on which the product was first purchased for use or consumption." Or. Rev. Stat. § 30.905(1) (1997).[3] Wisconsin has no statute of repose in product liability cases.

¶ 19. The Sharps argue that Oregon's statute of repose would not bar their claims in the present case because Case Corporation's negligent post sale acts and omissions fall outside the Oregon statute of repose. They rely on *Erickson Air-Crane v. United Tech. Corp.*, 735 P.2d 614, 618 (Or. 1987), in which the Oregon Supreme Court reviewed the legislative history of the statute of repose. The *Erickson* court held that the Oregon legislature did not intend the statute to immunize defendants for claims of product liability based upon negligent acts or omissions committed after the sale of

---

[3] Or. Rev. Stat. § 30.900 (1997) defines "product liability civil action" as follows:

> [A] civil action brought against a manufacturer, distributor, seller or lessor of a product for damages for personal injury, death or property damage arising out of:
>
> (1) Any design, inspection, testing, manufacturing or other defect in a product;
>
> (2) Any failure to warn regarding a product; or
>
> (3) Any failure to properly instruct in the use of a product.

11

a product. The Oregon Supreme Court stated its conclusion in *Erickson* as follows:

> We conclude from the foregoing legislative history that the legislature, in enacting ORS 30.905, contemplated placing limits only on a defendant's exposure to liability for acts or omissions taking place before or at the time that the defendant places a product in the stream of commerce. Nothing in ORS 30.905 or its legislative history indicates that the legislative intent was to allow a manufacturer to retreat to the date of "first purchase for use or consumption" and raise the defense of ORS 30.905 for negligent acts committed after the date of the first purchase for use or consumption.

*Id.* at 618; *see also Jamison v. Spencer R.V. Center, Inc.,* 779 P.2d 1091, 1093 (Or. App. 1989).

¶ 20. Citing to a footnote in *Sealey v. Hicks,* 788 P.2d 435, 441 n.14 (Or.), *cert. denied,* 489 U.S. 819 (1990), Case Corporation claims that the Oregon Supreme Court explicitly left open the question of whether post sale failures to warn fall outside the statute of repose. In *Sealey* the plaintiffs argued that the complaint alleged a negligent, continuing failure to warn of a motor vehicle's defects and that a two-year negligence statute of limitations governed. The *Sealey* court concluded that the only reasonable reading of the allegations was that they referred to an initial failure to warn prior to the first sale of the vehicle. The *Sealey* court went on to state in footnote 14: "We express no opinion as to whether a properly pleaded continuing failure to warn would actually state a cause of action independent of the statutory product liability claim." *Sealey,* 788 P.2d at 441 n.14. Case Corporation relies on this footnote to cast doubt on the continued viability of *Erickson.*

¶ 21. We are unconvinced by the argument advanced by Case Corporation about footnote 14 in *Sealey*. Neither that footnote nor the accompanying text calls into question the Oregon Supreme Court's *Erickson* decision. The *Sealey* court does not cite or discuss *Erickson* anywhere in its opinion,[4] and was addressing an entirely different issue from the one addressed in *Erickson*. The present case is an *Erickson* type case, and *Sealey* has no bearing on *Erickson* or this case.

¶ 22. After studying the applicable Oregon cases, we conclude that Oregon's statute of repose is not applicable to the post sale warning claim involved in the present case.[5] Because Wisconsin law contains no such statute of repose, we hold that no genuine conflict exists between the laws of Wisconsin and Oregon on this issue and we conclude that the Sharps' action is timely under Wisconsin law.

III

¶ 23. The second issue presented by Case Corporation is whether the court of appeals erred in refusing

[4] See Jay M. Zitter, *Validity and Construction of Statute Terminating Right of Action for Product-Caused Injury at Fixed Period After Manufacture, Sale or Delivery of Product*, 30 A.L.R. 5th 1, 74 (1995), discussing the rule in *Erickson* without mentioning *Sealey*.

[5] The court of appeals held on a different basis that the Oregon statute of repose could not be borrowed to bar the suit because the question of the timeliness of an action was governed by Wis. Stat. § 893.07 and *Leverence v. United States Fidelity & Guaranty*, 158 Wis. 2d 64, 462 N.W.2d 218 (Ct. App. 1990), which held that § 893.07 did not provide for the borrowing foreign statutes of repose. We need not address this issue.

13

to apply an Oregon law that Case Corporation asserts limits Steven Sharp's recovery of non-economic damages to $500,000.

¶ 24. The Oregon statutory provision limiting non-economic damages to $500,000, Or. Rev. Stat. § 18.560 (1997), provides as follows:

> Except for claims subject to [certain statutory provisions not at issue here], in any civil action seeking damages arising out of bodily injury, including emotional injury or distress, death or property damage of any one person. . ., the amount awarded for non-economic damages shall not exceed $500,000.

This limitation on non-economic damages was enacted by the Oregon legislature in 1987. Since then, the Oregon courts have reviewed the constitutionality of this statute several times, and the matter is now pending before the Oregon Supreme Court.

¶ 25. In *Tenold v. Weyerhaeuser Co.*, 873 P.2d 413, 421 (Or. App. 1994), *review dismissed*, 901 P.2d 859 (Or. 1995), the court of appeals held that the statute limiting non-economic damages violated Article VII, section 3, of the Oregon Constitution, which provides that "no fact tried by a jury shall be otherwise reexamined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict." *See* Or. Const. art. VII, § 3. Specifically, the *Tenold* court explained that the statutory limitation on non-economic damages was unconstitutional because it "requires the court to apply the monetary standard in every case, whether or not the evidence supports the jury's higher damage award." *Tenold*, 873 P.2d at 421.

¶ 26. A year later, the Oregon Supreme Court upheld the statutory limitation on non-economic dam-

ages but only in the limited context of a statutory wrongful death suit. *See Greist v. Nicky Don Phillips*, 906 P.2d 789 (Or. 1995). Carefully rendering a decision limited to the issue presented in the case, the Oregon Supreme Court in *Greist* held that the statutory limitation on non-economic damages was not unconstitutional in the context of its application to the Oregon wrongful death statute because Article VII, section 3, of the Oregon Constitution did not restrict the legislature's authority to set a maximum recovery in statutory wrongful death actions. *Greist*, 906 P.2d at 798. In other words, in *Greist*, the Oregon Supreme Court took pains to leave the *Tenold* rule undisturbed.

¶ 27. In 1996, in *Lakin v. Senco Products, Inc.*, 925 P.2d 107, 122–23 (Or. App. 1996), *review granted*, 939 P.2d 621 (1997), the Oregon court of appeals applied the *Tenold* rule to reinstate a jury damages award in a products liability suit and declared the statutory limitation on non-economic damages unconstitutional. The *Lakin* court held that *Greist* was inapplicable because it pertained only to legislatively created claims, explaining that "*Greist*, by its terms, applies only to wholly statutory actions without common law underpinnings. . . ." *Lakin*, 925 P.2d at 123. The Oregon Supreme Court subsequently granted review of the *Lakin* decision. This review is still pending in that court.

¶ 28. During oral arguments, counsel for Case Corporation informed this court that trial courts in Oregon are currently not applying the statutory limitation on non-economic damages. Our own research found that the Oregon court of appeals continues to apply the *Tenold* rule and reinstates jury awards that have been reduced under the statute. *See, e.g., Davidson v. Brown*, 963 P.2d 87 (Or. App. 1998); *Lawrence v.*

15

*Equipments Denis, Inc.*, 880 P.2d 973, 974 (Or. App. 1994).

¶ 29. Because Oregon courts are not applying the Oregon statutory limits on non-economic damages, this court should not apply the Oregon statutory limits in this case, even if we were to decide, which we do not, that this Oregon law is applicable in this case. We therefore apply Wisconsin law. No Wisconsin law limits non-economic damages in products liability cases.

## IV

¶ 30. The third issue presented by Case Corporation for review is whether the court of appeals erred in refusing to strike down the jury verdict on the grounds of inherent and fatal inconsistencies in the jury's responses to the special verdict questions. Case Corporation argues two points. First, Case Corporation asserts that it is inconsistent for a jury to find that the product was not unreasonably dangerous in a strict product liability sense but that the product was negligently designed. Second, Case Corporation argues that the verdict was factually inconsistent.

## A

¶ 31. Regarding recovery for negligence when the jury rejects a strict product liability claim, Case Corporation asks us to overrule *Greiten v. LaDow*, 70 Wis. 2d 589, 235 N.W.2d 677 (1975). More than 20 years ago, the *Greiten* court held that a jury finding that a product is not unreasonably dangerous does not preclude a jury finding of negligent design. Later cases have applied the *Greiten* rule. Case Corporation contends that the *Greiten* rule is unsound and should be

overruled. We do not accept Case Corporation's invitation to overrule *Greiten.*

¶ 32. In *Greiten,* Justice Heffernan wrote a controlling concurring opinion[6] that explained the legal distinction between a claim for the negligent design of a product and a strict liability claim for an unreasonably dangerous product as follows:

> There may be recovery for the negligent design of a product even though it is not unreasonably dangerous in the 402A[7] sense. All that it is necessary to prove is that the product is designed with a lack of ordinary care and that lack of care resulted in injury. No test of negligence has been called to the attention of this writer that requires that the product be unreasonably dangerous in order to predicate liability.
>
> . . . .
>
> It is obviously desirable to attempt to do what the majority strives for—to have some uniformity of rules between the *Dippel* concept[8] and the ordinary negligence concept. I believe, however, it is a matter of comparing apples and oranges, for *Dippel* is based upon the public-policy premise that a seller is socially responsible for what he puts into the stream of commerce irrespective of his degree of care. . . .On the other hand, negligence is based

---

[6] As explained in *Howes v. Deere & Co.,* 71 Wis. 2d 268, 274, 238 N.W.2d 76 (1976), Justice Heffernan's concurring opinion in *Greiten* represents the majority opinion of the court.

[7] *Restatement (Second) Torts* § 402A summarizes the elements of a manufacturer's strict liability for placing an unreasonably dangerous product into the stream of commerce.

[8] In *Dippel v. Sciano,* 37 Wis. 2d 443, 459, 155 N.W.2d 55 (1967), this court adopted the formulation of the test for strict liability set forth in *Restatement (Second) Torts* § 402A.

upon a theory of fault. We look in the ordinary negligence case not only to the result of the defendant's action, but rather to his conduct in attaining that result.

*Greiten*, 70 Wis. 2d at 603–04.

¶ 33. In cases subsequent to *Greiten*, this court repeatedly rejected the contention that a jury's findings were inconsistent when the jury found that a manufacturer's conduct was negligent with regard to a product but that the product defect was not unreasonably dangerous in the strict products liability sense. *See Giese v. Montgomery Ward, Inc.*, 111 Wis. 2d 392, 413–14, 331 N.W.2d 585 (1983); *Fischer v. Cleveland Punch & Shear Works Co.*, 91 Wis. 2d at 98–99; *Howes v. Deere & Co.*, 71 Wis. 2d 268, 273, 238 N.W.2d 76 (1976).

¶ 34. Immediately after *Greiten* was decided, and up until now, courts in other jurisdictions and commentators have been critical of *Greiten* and its progeny.[9] These courts and commentators reason as follows: negligence requires a jury to find that the product creates an unreasonable risk of harm to the consumer; if the jury finds that the product does not present an unreasonable danger or defect in the strict products liability sense, then the jury cannot find the manufacturer negligent because the jury cannot logically find an unreasonable risk of harm to the consumer created by

---

[9] *See, e.g., Tipton v. Michelin Tire Co.*, 101 F.3d 1145, 1150 (6th Cir. 1996); *Garrett v. Hamilton Standard Controls, Inc.*, 850 F.2d 253, 257, n.8 (5th Cir. 1988); *Restatement (Third) of Torts* § 2, *Comment n* at 35, Reporters' Notes, *Comment n* at 108 (1998); Aaron D. Twerski, *From Defect to Cause to Comparative Fault—Rethinking Some Product Liability Concepts*, 60 Marq. L. Rev. 297, 331–35 (1977); Note, *Products Liability in Wisconsin*, 1977 Wis. L. Rev. 227, 236–43 (1977).

the manufacturer's conduct. In other words, both strict liability and negligent design depend on the existence of a defective product; if a factfinder finds that a product is not defective under the strict products liability claim, then how can a negligence claim succeed?

¶ 35. Others have supported the *Greiten* case and explained that the *Greiten* court may have been fearful that the term unreasonably dangerous used in strict products liability law sounds as if the requisite proof for a product defect is some form of extraordinary danger, more than is required in negligence. Under this reasoning, a jury's finding that a defect did not create a quantum of danger reaching the "unreasonable" level in deciding a strict liability claim does not preclude a finding that a defect existed that could have been discovered and that failure to discover the defect constituted a breach of a defendant's duty of ordinary care, thereby causing a plaintiff's injuries.[10]

¶ 36. Case Corporation does not present new arguments in the debate about *Greiten*. We recognize that *Restatement (Third) of Torts* was published in 1998 and may offer new insights into products liability law, but we decline at this time to reconsider and overrule the long-standing precedent of *Greiten*.

## B

¶ 37. In addition to its challenge to *Greiten*, Case Corporation challenges the jury verdict on the grounds

[10] *See, e.g., Randall v. Warnaco, Inc., Hirsch-Weis Div.*, 677 F.2d 1226, 1231–32 n.5 (8th Cir. 1982); *Hansen v. Cessna Aircraft Co.*, 578 F.2d 679, 684–85 (7th Cir. 1978); Aaron D. Twerski, *From Defect to Cause to Comparative Fault—Rethinking Some Product Liability Concepts*, 60 Marq. L. Rev. 297, 331–35 (1977).

that two of the jury's answers to special verdict questions are factually inconsistent. According to Case Corporation, the jury's finding that the product was not unreasonably dangerous is inconsistent with the jury's finding that after manufacture and sale of the product, Case Corporation learned of a defect posing a serious hazard that originated at and was unforeseeable at the time of manufacture and that Case Corporation did not use due care in warning about the danger. ██

¶ 38. When reviewing a jury verdict to determine whether it is fatally inconsistent, this court will uphold the verdict when the record is such that the jury could have made both of the findings that are claimed to be inconsistent. *See Fischer*, 91 Wis. 2d at 99. We do not see any inconsistency between the two findings complained of in this case. A defect imposing a serious hazard may not be unreasonably dangerous. We agree with the circuit court that "the jury could have found that some or all of the defects pointed out by plaintiffs' experts were not foreseeable at the point of sale, but became apparent later." Accordingly, we hold that the special verdict findings are not fatally inconsistent.

V

¶ 39. The fourth and final issue presented by Case Corporation is whether the circuit court erred, as a matter of law, in submitting the question of punitive damages to the jury. Before the question of punitive damages can be submitted to a jury, the circuit court must determine, as a matter of law, that evidence was presented at trial that would support an award of puni-

tive damages.[11] The circuit court should not submit the issue of punitive damages to the jury in the absence of evidence warranting a conclusion to a reasonable certainty that the party against whom punitive damages may be awarded acted with the requisite "outrageous" conduct.[12] The word "outrageous" is "an abbreviation for the type of conduct which justifies the imposition of punitive damages."[13]

¶ 40. A person's conduct is outrageous if the person acts either maliciously or in wanton, willful and in reckless disregard of the plaintiff's rights. A person's conduct is wanton, willful and in reckless disregard of the plaintiff's rights when it demonstrates an indifference on the person's part to the consequences of his or her actions, even though he or she may not intend insult or injury.

¶ 41. The allegation in the present case is that Case Corporation acted with reckless disregard of rights of others. Punitive damages may be awarded in product liability suits if the plaintiff proves by clear and convincing evidence that the harm suffered was the result of the manufacturer's reckless disregard for the safety of product users, consumers or others who might be harmed by the product.[14]

¶ 42. To determine whether, as a matter of law, the question of punitive damages should have been

---

[11] *Bank of Sun Prairie v. Esser*, 155 Wis. 2d 724, 735, 456 N.W.2d 585 (1990).

[12] *Wangen v. Ford Motor Co.*, 97 Wis. 2d 260, 298, 294 N.W.2d 437 (1980); *Jacque v. Steenberg Homes, Inc.*, 209 Wis. 2d 605, 614, 563 N.W.2d 154 (1997); *Bank of Sun Prairie*, 155 Wis. 2d at 735.

[13] *Wangen*, 97 Wis. 2d at 268.

[14] *Wangen*, 97 Wis. 2d at 300 n.23.

submitted to the jury, the reviewing court independently reviews the record.[15] The circuit court in this case considered the issue of submitting the punitive damages question to the jury on the record and determined that there was sufficient evidence to do so. The focus of the circuit court's inquiry, and of our inquiry, is whether the evidence warranted a conclusion to a reasonable certainty that Case Corporation acted with the requisite outrageous conduct.

¶ 43. Case Corporation argues that the question of punitive damages should not have been submitted to the jury because in the years preceding Steven Sharp's injury, Case Corporation had notice of only two alleged malfunctions, which were 12 years apart, and it had sold 87,000 tractors over that 20-year period. Two instances of injury out of 87,000 tractors sold, Case Corporation argues, are insufficient to warrant the imposition of punitive damages even if they involved clear incidents of PTO lever malfunctions. Case Corporation asserts that a jury cannot be asked to infer from this evidence that it was aware of a dangerous defect in the PTO lever system, that it realized it had a duty to issue new warnings of this defect or that it had consciously declined to take remedial action.

¶ 44. We agree with Case Corporation that the frame of mind of the alleged wrongdoer is a necessary consideration in determining whether punitive damages may be imposed. Some type of knowledge is a necessary component to the imposition of punitive damages because an alleged wrongdoer who is unaware of a product's defect cannot be recklessly

___

[15] *Steenberg Homes*, 209 Wis. 2d at 614; *Bank of Sun Prairie*, 155 Wis. 2d at 736; *Lievrouw v. Roth*, 157 Wis. 2d 332, 344, 459 N.W.2d 850 (Ct. App. 1990).

disregarding the rights of another person. *Walter v. Cessna Aircraft Co.*, 121 Wis. 2d 221, 227 n.2, 358 N.W.2d 816 (Ct. App. 1984). "Of course, if a manufacturer studiously avoids gaining any knowledge of the defect and the specific harm it may cause, it will not have knowledge in the literal sense. However it would be liable anyway because of its fraudulent misconduct." *Walter*, 121 Wis. 2d at 227 n.2.

¶ 45. In a products liability case, a manufacturer may be found to have acted in reckless disregard if, after having gained specific knowledge of a product's defect and its potential harm, the manufacturer fails to take some action that the defect demands, such as adequate testing procedures, effective quality control, sufficient warnings or adequate remedial procedures such as product recalls or post sale warnings. *Walter*, 121 Wis. 2d at 227–28.

¶ 46. We agree with the circuit court's conclusion that the evidence was sufficient to send the question of punitive damages to the jury. The jury could have found from the evidence that the design of the tractor's PTO lever was inadequate from the beginning, was defective and had not been adequately tested; that Case Corporation had notice of the multiple clutch problems with the lack of full engagement; that Case Corporation had received complaints that "off" was not really "off," that the PTO drive would suddenly self-start without warning and expose users of the tractor to potentially catastrophic injury, and that Case Corporation had failed to adequately investigate complaints; that the pre-sale warnings were inadequate and misleading; and that despite its knowledge of the defect and potential harm to users of the product, Case Corporation failed to implement adequate remedial

measures, such as post sale warnings, that were available and inexpensive.

¶ 47. Therefore, a reasonable jury could, as the circuit court reasoned, conclude that Case Corporation was indifferent to the consequences of its conduct. If the jury accepted the Sharps' "see no evil" version of Case Corporation's conduct, a jury could believe based on the evidence presented that improper conduct by Case Corporation had extended for a long time and amounted to reckless disregard for the safety of the users of the equipment.

¶ 48. Although Case Corporation presented evidence to support its position that it did not have sufficient knowledge or notice of the defect, the evidence adduced at trial permitted a reasonable jury to find by clear and convincing evidence that Case Corporation's conduct constituted a reckless disregard for the safety of others.[16] We briefly examine the evidence.

¶ 49. First, the jury was presented with evidence from which it could find inadequate or defective design or pre-sale testing. The record demonstrates that the designer of the PTO system had no mechanical or design engineering education and was inexperienced in operating tractors. The designer did not consult on a regular basis with the chief engineer of the Case Corporation to determine how the controls he was designing would interact with the hydraulic system. The designer mistakenly thought there was a dead zone that would keep the PTO from operating when the lever was in a position somewhere between fully forward and fully rearward.

---

[16] See Brown v. Maxey, 124 Wis. 2d 426, 433, 369 N.W.2d 677 (1985); Wangen, 97 Wis. 2d at 300 n.23; Fahrenberg, 96 Wis. 2d at 221.

¶ 50. Second, evidence was presented from which a jury could find that Case Corporation had notice of the multiple clutch problems with the lack of full engagement. Soon after the first of these tractors were sold in 1969, Case Corporation began getting warranty claims for clutch replacements. It learned that farmers were leaving the PTO lever short of fully forward after engagement, which resulted in clutch warpage and burnout. The Case Corporation designer was asked to devise a solution that would result in the lever staying in the "on" position. He devised a "top hat" and then a sloped ramp with a spring to assure that operators would get the lever forward enough to stop clutch warpage. The designer, however, did not analyze the slope ramp from a safety perspective. Sharps' expert called the spring design defective.

¶ 51. Third, a jury could find from the evidence presented that Case Corporation had received complaints that "off" was not really "off," that the PTO drive would suddenly self-start without warning, exposing users of the tractor to potentially catastrophic injury, and that Case Corporation had failed to adequately investigate these complaints. Case Corporation was informed that the PTO would actually start when set a quarter inch from the back rather than fully forward in the slot. Furthermore, Case Corporation knew that an operator could mistakenly believe the PTO was on when the PTO shaft was turning and would mistakenly believe that the PTO was off when the shaft stopped turning.

¶ 52. In 1985, Case Corporation investigated a complaint of a delayed and unexpected self-start that resulted in a farmer's arm being horribly mangled. The jury could believe that the investigator from Case Corporation did not attempt to simulate the conditions of

the accident and that Case Corporation did not adequately explore the cause of the accident. In 1973, a Minnesota farmer told a Case factory representative about self-starts he had experienced. The jury could find that Case Corporation failed to properly test the PTO lever design after receiving these two notices of defects.

¶ 53. Fourth, evidence was presented from which a jury could find that Case Corporation's pre-sale warnings were inadequate and misleading. For instance, there was testimony that the pre-sale warnings and manual did not address the PTO system's propensity to engage somewhere approximately a quarter inch out of the disengaged position and that Case Corporation did not consider changing the instructions after learning that farmers were burning out clutches by not getting the PTO lever into the fully "on" position. A Case Corporation engineer admitted that the instructions did not warn the operator that even if the lever was all the way back to where the PTO stopped turning, the system was not necessarily totally off, and that Case Corporation knew about this situation in 1969 but failed to include information about it in the warnings or operator's manual it distributed.

¶ 54. Fifth, evidence was presented from which a jury could find that despite its knowledge of the defect and potential harm to users of the product, Case Corporation failed to take adequate remedial measures, such as post sale warnings, that were available and inexpensive. For instance, the jury could have believed that Case Corporation failed to issue post sale warnings even though such warnings could have been issued simply and without great expense. Witnesses testified that Case Corporation had issued post sale warnings about other problems and that it was feasible and inex-

pensive to distribute warnings or decals to dealers. There was testimony that dealers were able to reach about 50 percent of tractor owners and that advertisements in national magazines could reach additional owners.

¶ 55. Therefore, we agree with the circuit court's review of the evidence before and after the verdict. The evidence presented warranted a conclusion to a reasonable certainty that Case Corporation acted with the requisite "outrageous" conduct and that therefore the question of punitive damages was properly submitted to the jury.

¶ 56. In summary, we hold that we do not apply the laws of Oregon on the issues of the statute of repose and the statutory limits on non-economic damages. Further, we decline to overrule *Greiten v. LaDow*, 70 Wis. 2d 589, we conclude there are no fatal inconsistencies in the jury verdict, and we uphold the jury award of punitive damages. Accordingly, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 57. Justice Jon P. Wilcox did not participate.