R. William MERNER and Shirley Merner, Plaintiffs,

and

Hawkeye Valley Area Agency on Aging and Allmerica Financial Life Insurance and Annuity Company, Involuntary Plaintiffs,

v.

DEERE & COMPANY and ABC Insurance Company, Defendants.

Rose M. Bahl and Betty B. Lipman, as Executor of the Estate of Leroy J. Bahl, deceased, Plaintiffs,

and

Tommy Thompson, Secretary of Department of Health & Human Services, Involuntary Plaintiff,

v.

Deere & Company and ABC Insurance Company, Defendants.

Nos. 01–CV–492, 01–CV–493.

United States District Court, E.D. Wisconsin.

Dec. 18, 2001.

Lynn R. Laufenberg, Laufenberg Law Offices, Milwaukee, WI, for R. William Merner and Shirley Merner, Rose M. Bahl, and Betty B. Lipman.

Jeffrey T. Nichols, Crivello, Carlson, Mentkowski & Steeves, Milwaukee, WI, for Allmerica Financial Life Insurance and Annuity Company.

Matthew V. Richmond, United States Department of Justice, Office of the U.S. Attorney, Milwaukee, WI, for Health and Human Services Secretary.

Daniel J. LaFave, Quarles & Brady, Milwaukee, WI, Michael L. Zaleski, Quarles & Brady, Madison, WI, for Deere & Company.

## DECISION AND ORDER

RANDA, District Judge.

This consolidated products liability suit, removed from Dodge County Circuit Court, now comes before the Court on Deere & Company's ("Deere") motion for summary judgment. For the reasons stated below, Deere's motion is granted.

## BACKGROUND

On June 16, 1999, a fire broke out at Mr. and Mrs. R. William Merner's Cedar Rapids, Iowa home. Mr. Merner was attempting to refuel their Model 112 John Deere lawn and garden tractor. Both Mr. and Mrs. Merner sustained serious injuries. Stipulated Facts, ¶ 5. Deere manufactured the tractor in its Horicon, Wisconsin facilities on or about March 9, 1973. *Id.*, ¶ 6. Don Winter of Lawler, Iowa purchased the tractor on or about April 28, 1973. *Id.*, ¶ 7. The Merners purchased the tractor on or about July 22, 1983 from an authorized dealer in Waterloo, Iowa. *Id.*, ¶ 8.

On August 16, 2000, a fire broke out at Mr. and Mrs. LeRoy Bahl's Waterloo, Iowa home. Mr. Bahl was attempting to refuel a borrowed Model 110 John Deere lawn and garden tractor. Both Mr. and Mrs. Bahl sustained injuries, and Mr. Bahl eventually died from his injuries on September 2, 2000. *Id.*, ¶ 1. Deere manufactured the tractor in its Horicon, Wisconsin facilities on or about December 15, 1971. *Id.*, ¶ 2. On or about March 24, 1972, J.F. Oler of Waterloo, Iowa purchased the tractor. *Id.*, ¶ 3. At the time of the accident, Joel Cizek, one of the Bahls' neighbors, owned the tractor. *Id.*, ¶ 4.

The Merners and Bahls both filed their lawsuits in Dodge County Circuit Court on April 2, 2001. Both complaints allege identical causes of action for negligence, strict liability, and punitive damages. On May 15, 2001, Deere properly removed both cases, invoking the Court's diversity jurisdiction. On July 3, 2001, the Court granted Deere's unopposed motion to consolidate these cases.

## SUMMARY JUDGMENT STANDARDS

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Summary judgment is no longer a disfavored remedy. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.*, at 327, 106 S.Ct. 2548. It "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." *United Food and Commercial Workers Union Local No. 88 v. Middendorf Meat Co.*, 794 F.Supp. 328, 330 (E.D.Mo.1992). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). While a *material* fact is one that is "outcome determinative under the governing

law," *Whetstine v. Gates Rubber Co.*, 895 F.2d 388, 392 (7th Cir.1990), a *genuine* issue as to that material fact is raised only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

The question whether a material issue of fact is *genuine* necessarily requires "some quantitative determination of sufficiency of the evidence." Childress, *A New Era for Summary Judgments: Recent Shifts at the Supreme Court*, 116 F.R.D. 183, 186 (1987). "Of course, a court still cannot resolve factual disputes that could go to a jury at trial, . . . [b]ut no longer need the trial court leave every sufficiency issue for trial or a later directed verdict motion." *Id.* "A district judge faced with [a summary judgment motion] must decide, subject of course to plenary appellate review, whether the state of the evidence is such that, if the case were tried tomorrow, the plaintiff would have a fair chance of obtaining a verdict. If not, the motion should be granted and the case dismissed." *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572–73 (7th Cir.1989) (citations omitted). Thus, a party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corporation*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "[A] party must produce 'specific facts showing that there remains a genuine issue for trial' and evidence 'significantly probative' as to any [material] fact claimed to be disputed." *Branson v. Price River Coal Company*, 853 F.2d 768, 771–72 (10th Cir.1988). "If the evidence is merely colorable, or is not significantly probative, summary judgment

may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505. Nor may "[a] party to a lawsuit . . . ward off summary judgment with an affidavit or deposition based on rumor or conjecture. 'Supporting and opposing affidavits shall be made on personal knowledge, . . . .'" *Palucki*, 879 F.2d at 1572 (7th Cir.1989). Such principles insure that summary judgment is utilized "when it can be shown that a trial would serve no useful purpose." *Windham v. Wyeth Laboratories, Inc.*, 786 F.Supp. 607, 610 (S.D.Miss.1992).

## ANALYSIS

### I. LAW OF THE CASE WHEN A FEDERAL COURT IS SITTING IN DIVERSITY

When a federal court sits in diversity pursuant to 28 U.S.C. § 1332 ("Section 1332"), state substantive law applies. *See West Bend Company v. Chiaphua Industries, Inc.*, 112 F.Supp.2d 816, 821 (E.D.Wis.2000) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). When applying the substantive law of a particular state, courts sitting in diversity look first to the state's highest court for guidance, here the Wisconsin Supreme Court.[1] *See Perez–Trujillo v. Volvo Car Corp. (Sweden)*, 137 F.3d 50, 55 (1st Cir.1998). If there is no such controlling decision, courts look to the decisions of the state's intermediate appellate courts. *See Pentech Int'l, Inc. v. Wall St. Clearing Co.*, 983 F.2d 441, 445–446 (2d Cir.1993). Ultimately, "[i]n a case where state law provides the rule of decision, our job in the federal courts is to predict how the *highest court* of the state would decide the case if presented with the case *today*." *Boland v. Engle*, 113 F.3d 706, 710 (7th Cir.1997) (emphasis added).

**1.** Since the parties do not raise a conflict of laws issue, the Court will apply Wisconsin law to the present action. *See Transamerica Insurance Company v. South*, 975 F.2d 321, 327

(7th Cir.1992). Indeed, the Wisconsin law applied and discussed in this case is the Borrowing Statute, one purpose of which is to avoid conflict of laws issues or problems.

In addressing this motion, the Court first must decide whether the Wisconsin Supreme Court would apply Iowa's fifteen-year statute of repose to these claims via Wisconsin's Borrowing Statute ("the Borrowing Statute.") Second, assuming that it would, the Court must decide whether the Wisconsin Supreme Court would conclude that the claims are time-barred under that statute.

## II. APPLICABILITY OF IOWA'S STATUTE OF REPOSE

 Under the Borrowing Statute, does Iowa's fifteen-year statute of repose apply to the present actions? The Borrowing Statute reads,

(1) If an action is brought in this state on a foreign cause of action and the foreign period of limitation which applies has expired, no action may be maintained in this state.

(2) If an action is brought in this state on a foreign cause of action and the foreign period of limitation which applies to that action has not expired, but the applicable Wisconsin period of limitation has expired, no action may be maintained in this state.

Wis.Stat. § 893.07. The Borrowing Statute therefore directs courts to apply the shortest limitations period possible to "foreign causes of action." *See Guertin v. Harbour Assurance Co. of Bermuda, Ltd.,* 141 Wis.2d 622, 415 N.W.2d 831, 834–35 (1987). The term "foreign cause of action" refers to actions like those before the Court which are premised on injuries sustained out of state. *See Faigin v. Doubleday Dell Pub. Group, Inc.,* 98 F.3d 268, 269 (7th Cir.1996). The injuries here occurred in Iowa, and under Iowa law,

[Actions] founded on . . . injuries to the person . . . brought against the manu-

facturer . . . of a product based upon an alleged defect in the design, inspection, testing, manufacturing, formulation, marketing, packaging, warning, labeling of the product, or any other alleged defect or failure of whatever kind, based on the theories of strict liability in tort, negligence, or breach of an implied warranty *shall not be commenced more than fifteen years after the product was first purchased.*

Iowa Code § 614.1(2A)(a) (emphasis added). Because Wisconsin has no statute of repose in product liability cases, the actions at bar would not be time-barred under Wisconsin law. By applying the Iowa law it would appear that they would be barred.

However, because the Wisconsin Court of Appeals has interpreted the phrase "period of limitation" in the Borrowing Statute to exclude statutes of repose, application of the Iowa statute of repose appears to be precluded. While there is no Wisconsin Supreme Court decision interpreting "period of limitation" in the Borrowing Statute, according to the Wisconsin Court of Appeals, "the plain language of [§ 893.07] refers to a period of limitation, not a period of repose." *Leverence v. U.S. Fidelity & Guaranty,* 158 Wis.2d 64, 462 N.W.2d 218, 231 (1990). Under the logic of *Leverence,* because the phrase "period of limitation" does not refer to or include a statute of repose but only a statute of limitations, Iowa's fifteen-year limitations period for tort actions cannot be "borrowed." Thus according to *Leverence,* the time for bringing these causes of action did not begin running the moment the products were purchased, but rather the time began to run from the dates of the respective injuries or from the date the injuries were discovered.[2,3]

---

**2.** *See* Wis.Stat. § 893.04: *"Unless otherwise specifically prescribed by law,* a period of limi-

tation within which an action may be commenced is computed from the time that the

Despite the holding of the Court of Appeals in *Leverence*, the Court is not bound by that interpretation of the Borrowing Statute. Courts can disregard the decisions of a state's intermediate appellate court if there exists "persuasive data [which] indicate[s] that the highest state court would decide the issue differently." Moore's Fed. Practice, § 124.20[2]; *see also Eljer Mfg. v. Liberty Mut. Ins. Co.*, 972 F.2d 805, 813–814 (7th Cir.1992). An example of such "persuasive data" would be decisions "of the state's highest court in analogous or related areas that suggest that the highest court would decide the issue differently." *Id.; see also Green v. Walker*, 910 F.2d 291, 295–296 (5th Cir. 1990). Deere offers two such decisions: *Landis v. Physicians Ins. Co. of Wisconsin, Inc.*, 245 Wis.2d 1, 628 N.W.2d 893 (2001) and *Aicher v. Wisconsin Patients Compensation Fund*, 237 Wis.2d 99, 613 N.W.2d 849 (2000). The Court will examine each decision in turn.

cause of action accrues until the action is commenced."

3. It would appear that the plain and clear meaning of the language "foreign period of limitation that applies" references the period of limitation as defined by the foreign jurisdiction, in this case Iowa. Because the statute directs the application of the foreign period of limitation, the application by *Leverence* of the meaning given in Wisconsin to the phrase "period of limitation" is inappropriate. Discussion of the difference, similarity, or ambiguity between statutes of limitation and statutes of repose, as it relates to Wisconsin's "period of limitation," is unnecessary. The statute, when it directs the courts to apply the "foreign period of limitation," directs the courts to apply the foreign state's meaning of the phrase. The *Leverence* court, by eliminating statutes of repose from the phrase "period of limitation," altered the Iowa law that states that the period of limitation in these types of cases is the 15–year statute of repose. By so doing, it failed to apply the foreign period of

## A. The Wisconsin Supreme Court's decision in Landis

In *Landis*, the Wisconsin Supreme Court was required to decide whether invoking the mandatory mediation process for medical malpractice actions under Wis. Stat. § 655.44 tolled the five-year statute of repose for such claims.[4] § 655.44(4) provides that any "applicable *statute of limitations* is tolled on the date the director of state courts receives the request for mediation." (Emphasis added). The Court of Appeals held that § 655.44(4) did not toll the applicable statute of repose, but the Supreme Court reversed. According to Justice Prosser,

the § 655.44 mediation process tolls the five-year deadline for filing a medical malpractice action under § 893.55(1)(b). *When the legislature wrote the language in § 655.44(4) tolling '[a]ny applicable statute of limitations,' it intended to include any applicable statute of repose.* In this subsection, the legislature made no distinction between a statute of limitations and a statute of repose. In nu-

limitation. Such an effort runs counter to the policy of the borrowing statute, whose purpose is to bring certainty to difficult choice of law questions. Equally, if not more important, it runs counter to the principle that once a cause of action is determined to be "foreign" the borrowing statute adopts as *Wisconsin law* the law of the foreign state, if the law of limitation is shorter. *See Guertin* at 836.

It is the duty of the Court to determine the direction of Wisconsin law from analogous cases. Because the Wisconsin Supreme Court has not interpreted the phrase "foreign period of limitation," and the absence of cases prevents an analogical analysis, this footnote cannot be the basis for the Court's decision. However, the apparent clear meaning of the statute suggests that when the Wisconsin Supreme Court is presented with the issue directly it would accept this conclusion.

4. Wis.Stat. § 893.55(1)(b) allows a plaintiff to commence a medical malpractice action no "more than 5 years from the date of the act or omission."

merous other statutes, the legislature has not differentiated with a precise statutory label whether a time limitation for commencing an action is a statute of limitations or a statute of repose. *The term 'statute of repose' is largely a judicial label for a particular type of limitation on actions.*

*Landis*, 628 N.W.2d at 896 (emphasis added). Similarly, in Wis.Stat. § 893.07, the legislature has made no distinction between a statute of limitations and a statute of repose. Reference is made to "foreign period of limitation" but not to statutes of repose or statutes of limitation. Indeed, as Justice Bradley noted in her concurring opinion, "the term 'statute of repose' is not part of the legislature's lexicon, but rather is a judicially created label used to describe a *particular type of limitation on actions.*" *Id.* at 908 (emphasis added). Both the Borrowing Statute and the medical malpractice statutes were enacted in 1979, and Deere persuasively argues, "[i]t is incomprehensible that the Wisconsin Supreme Court would find that Wisconsin's legislature intended statutes of limitation to equal statutes of repose in 1979 for one statute, but not another." Reply Brief, p. 6. Therefore, given this precedent, it appears that today (and in the future) the Wisconsin Supreme Court will consider the term "statute of limitations" to include statutes of repose. It follows that the Wisconsin Supreme Court (assuming it reads Wisconsin law into foreign limitations) would similarly hold that the term "foreign period of limitation" in § 893.07 borrows from other jurisdictions both statutes of limitation as well as statutes of repose. Accordingly, under § 893.07, the fifteen-year period of repose is borrowed from Iowa Code § 614.1(2A)(a).

In an attempt to distinguish *Landis*, plaintiffs argue that the logic the Supreme Court applied to the medical malpractice statutes does not apply to the Borrowing Statute. Plaintiffs rely on the judicial

committee notes which accompany § 893.07. The note provides: "Subsection (1) applies the provision of s. *893.05* that the running of a *statute of limitations* extinguishes the right as well as the remedy to a foreign cause of action on which an action is attempted to be brought in Wisconsin in a situation where the foreign period has expired." (Emphasis added). The note accompanying § 893.05 provides:

> This new section is a codification of Wisconsin case law. See *Maryland Casualty Company v. Beleznay*, 245 Wis. 390, 14 N.W.2d 177 (1944), in which it is stated at page 393: "In Wisconsin the running of the statute of limitations absolutely extinguishes the cause of action *for in Wisconsin limitations are not treated as statutes of repose.* The limitation of actions is a right as well as a remedy, extinguishing the right on one side and creating a right on the other, which is as of high dignity as regards judicial remedies as any other right and it is a right which enjoys constitutional protection."

Emphasis added. Plaintiffs conclude: "Since the stated purpose of § 893.07(1) ... was to make a rule of the common law of Wisconsin which derives from *the longstanding judicial distinction between statutes of limitations and statutes of repose* applicable to foreign causes of action, the rationale of the court in *Landis* simply does not apply to an interpretation of the Borrowing Act." (Emphasis added).

■ The judicial committee language only *seems* to suggest what plaintiffs conclude. The purpose of § 893.07(1) was not to codify the "longstanding judicial distinction between statutes of limitations and statutes of repose applicable to foreign causes of action." *Maryland Casualty* is quoted in connection with § 893.05, which is titled "Relation of statute of limitations to right and remedy," and this section

codifies the concept that when "the period within which an action may be commenced on a Wisconsin cause of action has expired, the right is extinguished as well as the remedy." § 893.05. Accordingly, when the Court in *Maryland Casualty* held that "in Wisconsin limitations are not treated as statutes of repose," this was not in the context of addressing the distinction between a statute of limitations and a statute of repose, a distinction which the Court addresses today. Instead, it was cited as authority for the proposition that "the limitation of actions is a right as well as a remedy, extinguishing the right on one side and creating a right on the other." *Maryland Casualty*, 14 N.W.2d at 179. Under Wisconsin law, "statutes of limitation [are viewed as] substantive statutes because they create and destroy rights." *Betthauser v. Medical Protective Company*, 172 Wis.2d 141, 493 N.W.2d 40, 43 (1992). The quote in *Maryland Casualty* is therefore taken out of context.

Furthermore, decisions of the Wisconsin Supreme Court subsequent to *Maryland* reveal that the purported "longstanding judicial distinction" between statutes of limitation and statutes of repose does not exist. Indeed, " 'the policy of the law [is] that some reasonable lapse of time should end all controversies ... *This is the philosophy of statutes of limitation. They are therefore called 'statutes of repose.' "* *Ash Realty Corp. v. City of Milwaukee*, 25 Wis.2d 169, 130 N.W.2d 260, 263 (1964) (quoting *Oconto Co. v. Jerrard*, 46 Wis. 317, 50 N.W. 591, 593 (1879)) (emphasis added). The Court in *Landis* noted that the distinction is anything but clear:

> The dissent alleges that we have failed to consider that the legislature is presumed to be aware of court decisions.... Thus, according to the dissent, "[h]ad the legislature intended that § 655.44(4) applied to statutes of repose, as well as statutes of limitations, the legislature would have so stated."

The problem with this analysis is that the terms "statute of repose" and "statute of limitations" have long been two of the most confusing and interchangeably used terms in the law. *See* Francis E. McGovern, *The Variety, Policy and Constitutionality of Product Liability Statutes of Repose*, 30 AmU.L.Rev. 579, 582–87, 621 (1981) (reviewing interchangeable use of the phrases "statute of repose" and "statute of limitations" and confusion over the meaning of a statute of repose). As we said above, the legislature has not yet chosen to use the words "statute of repose."

*Landis*, 628 N.W.2d at 907, n. 16. The lack of clarity regarding this distinction supports the conclusion of the *Landis* court that in general there is no distinction.

Plaintiffs also argue that *Landis* cannot be used to undermine the holding of *Leverence* because *Landis* did not expressly or impliedly overrule *Leverence*. Not so. Later decisions from the state's highest court can not only be used to alter, amend, or undercut a decision from an intermediate court of appeals, but can also be used as evidence of how the Wisconsin Supreme Court would today decide the issue before the Court. *See* Moore's, § 124.20[2]. The fact that the Wisconsin Supreme Court has declined to review the issue decided in *Leverence* on two occasions, as plaintiffs point out, is of no value in predicting the future position of the Court because a "supreme court denial of a petition for review ... [carries] *no* implication of approval° or agreement." *In re Paternity of C.A.S.*, 156 Wis.2d 446, 456 N.W.2d 899, 903 (Ct.App.1990), *aff'd* 161 Wis.2d 1015, 468 N.W.2d 719 (1991) (emphasis added). *Landis* makes it fairly clear that the Wisconsin Supreme Court, if faced with the issue today, would decide that the Borrowing Statute refers to all

manner of limitation periods on actions, be they statutes of limitations or statutes of repose.

### B. *The Wisconsin Supreme Court's Decision in Aicher*

■ The court in *Leverence* had another reason for preventing the application of statutes of repose to causes of action arising under Wisconsin law, and that was constitutional. The court stated: "[E]ven if ... the distinction between the two terms is sufficiently blurred as to result in an ambiguity, we agree with the rationale expressed in *Beard* [*v. J.I. Case Co.*, 823 F.2d 1095 (7th Cir.1987) ]: the Wisconsin Supreme Court has chosen a route of statutory construction that avoids potential constitutional impediments." *Leverence* at 231.[5] The "potential constitutional impediment" which the *Leverence* court refers to is the "right to remedy" clause under the Wisconsin Constitution, which provides:

> Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property, or character; he ought to obtain justice freely, and without being obligated to purchase it, completely and without denial, promptly and without delay, conformably to the laws.

Article 1, § 9. A line of Wisconsin Supreme Court precedent suggested that the right to remedy clause barred the application of statutes of repose to causes of action brought under Wisconsin law because such legislation could have the effect of "barring a suit before an injury actually occurs." *Aicher*, 613 N.W.2d at 863. *Aicher* rejected this precedent and held that statutes of repose "do not violate the right-to-remedy clause because a prospective claimant does not have a legislative right to pursue a[n] ... action if the injury is discovered after the statutory time limitation period elapses." *Id.* at 873.[6] Accordingly, the constitutional obstacle has been eliminated, and the Wisconsin Supreme Court, if deciding the issue today would, it appears, apply Iowa's statute of repose under the Borrowing Statute.[7]

### III. ARE PLAINTIFFS' CLAIMS BARRED BY IOWA'S STATUTE OF REPOSE?

Applying Iowa's fifteen year statute of repose, would the Wisconsin Supreme Court conclude that the claims are time-barred? The relevant language of the statute bears repeating:

> [claims] ... based upon an alleged defect in the design, inspection, testing, manufacturing, formulation, marketing, packaging, warning, labeling of the product, or any other alleged defect or failure of whatever kind, based on the theories of strict liability in tort, negligence, or breach of an implied warranty *shall not be commenced more than fifteen years after the product was first purchased.*

Iowa Code § 614.1(2A)(a) (emphasis added). Since each of the tractors involved in these accidents were purchased more than

---

**5.** The avoidance of "constitutional impediments" may have been the deciding factor in the *Leverence* court's failure to apply the foreign period of limitation. But as discussed *infra*, constitutional impediments are no longer a concern.

**6.** The statute of repose at issue in *Aicher* was the same as the one at issue in *Landis*, and the Court went on to uphold it against equal protection and due process challenges.

**7.** Plaintiffs also argue that since the Wisconsin legislature did not attempt to overrule the holding in *Leverence*, this is evidence of legislative acquiescence. However, as Deere observes, until the decision in *Aicher*, any attempt to apply a statute of repose in Wisconsin, as the *Leverence* court refused to do, was considered unconstitutional. Accordingly, legislative inaction after *Leverence* was not evidence of acquiescence. Rather, it was most likely caused by the constitutional obstacle.

fifteen years ago, the plaintiffs' claims are time-barred.

Plaintiffs argue that their causes of action that allege post-sale negligent acts or omissions do not fall within the date of purchase standard of the Iowa statute. The Iowa statute does not apply because they allege that subsequent to the date of purchase, Deere was negligent in carrying out its "field retrofit program" on lawn and garden tractors manufactured between 1963 and 1975. Deere provided notice of this program through mailings to original owners and in advertisements in over 450 newspapers in the United States and Canada which included coupons to reimburse the consumer for the retrofit expense, conducted advertisements in company-sponsored magazines, and supplied dealers with pamphlets and counter displays with order forms. The program is still in effect. Stipulated Findings of Fact, ¶¶ 13–16.

■ The parties, as well as the Court, could find no Wisconsin or Iowa case law which addresses this issue. Nonetheless, the language of the statute is extremely broad. It applies to strict liability, negligence, and warranty causes of action based upon *any* alleged defect or failure of *any* *kind.* The Wisconsin Supreme Court has observed,

> The purpose of statutory interpretation is to discern the intent of the legislature. To determine this intent, we look first to the plain language of the statute. If the language of the statute clearly and unambiguously sets forth the legislative intent, it is our duty to apply that intent to the case at hand and not look beyond the statutory language to ascertain its meaning.

*Landis* at 898. The plain language of the statute makes it clear that Iowa's statute of repose applies to all actions based on product defects. The statute makes no distinction between those based on pre-sale negligence, negligence at the point of the sale, and post-sale negligence. Therefore, the Wisconsin Supreme Court in applying its standard of statutory construction would it appears hold that all of the plaintiffs' strict liability and negligence claims are barred by Iowa's statute of repose, even those based on post-sale negligence.

Plaintiffs further argue that *Sharp v. Case Corporation,* 227 Wis.2d 1, 595 N.W.2d 380 (1999) leans towards the opposite conclusion. In *Sharp,* the Court interpreted the Oregon statute of repose for products liability actions as not applying to actions based upon post-sale negligence. However, the Oregon statute is not as broad as the Iowa statute. Or.Rev.Stat. § 30.900 defines a "product liability civil action" as follows:

> [a] civil action brought against a manufacturer, distributor, seller or lessor of a product for damages for personal injury, death or property damage arising out of:
> (1) Any design, inspection, testing, manufacturing or other defect in a product;
> (2) Any failure to warn regarding a product; or
> (3) Any failure to properly instruct in the use of the product.

Not only does the Oregon statute not include protection from things such as "formulation, marketing [and] packaging," which would seem to cover plaintiffs' allegations of negligence relative to the retrofit program, it does not contain the very broad catch-all phrase in the Iowa statute: "any other alleged defect or failure of any kind." The Wisconsin Supreme Court also relied heavily on an Oregon Supreme Court decision which was directly on point. Accordingly, the Court's decision in *Sharp* is inapposite.[8]

---

8. In connection with the above, the Wisconsin Supreme Court most likely could not ignore

the Seventh Circuit's decision in *Avery v.*

## CONCLUSION

 Iowa's statute of repose, which bars all claims based on product defects brought more than fifteen years after the sale of the product, applies to the present actions through Wisconsin's Borrowing Statute. Because both actions were brought more than fifteen years after the original sale of each allegedly defective product, the claims are time-barred.[9]

NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:

1. Deere's motion for summary judgment is GRANTED; and

2. The case is DISMISSED.

**SO ORDERED,**

---

*Mapco Gas Products, Inc.,* 18 F.3d 448 (7th Cir.1994). In *Mapco,* the Court held that under Indiana law, negligent recall claims "merged" with the underlying product liability claims, and thus were barred by the statute of repose, which applied to "any product liability action in which the theory of liability is negligence or strict liability in tort." Ind. Code § 33–1–1.5–5(b) (1988). This broad language is similar to the language in the Iowa statute.

9. Plaintiffs' "cause of action" for punitive damages must also fail. A claim for punitive damages is not an independent cause of action. Therefore, since the negligence and strict liability claims have been dismissed, there can be no action for punitive damages.